## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL DIVERSITY,
378 N. Main Avenue
Tucson, AZ 85701;

DEFENDERS OF WILDLIFE,
1130 17th Street, N.W.
Washington, D.C. 20036;

ANIMAL LEGAL DEFENSE FUND,
525 E. Cotati Ave.
Cotati, CA  94931;

    Plaintiffs,

v.

MARK ESPER,
in his official capacity as Secretary of Defense
Department of Defense
1000 Defense Pentagon
Washington, D.C.  20301;

LIEUTENANT GENERAL TODD T. SEMONITE,
in his official capacity as Commander and Chief of
Engineers
U.S. Army Corps of Engineers
441 G Street, N.W.
Washington, D.C.  20314-1000;

CHAD WOLF,
in his official capacity as acting Homeland Security
Secretary
Department of Homeland Security
245 Murray Lane, S.W.
Washington, D.C. 20528;

    Defendants.

Case No.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.     In this action, Plaintiffs Center for Biological Diversity, Defenders of Wildlife, and Animal Legal Defense Fund challenge the Trump administration's decisions, for the second consecutive year, to take billions of dollars appropriated by Congress to the Department of Defense ("DoD"), and instead transfer those funds to border wall construction.

2.     The administration's Fiscal Year ("FY") 2020 transfers, totaling approximately $7.2 billion, rely on largely identical statutory mechanisms as the FY 2019 transfers, totaling approximately $6.7 billion. The FY 2019 transfers have been found unlawful on statutory or constitutional grounds by every court to have considered the merits, and were preliminarily enjoined by the Northern District of California and Western District of Texas. *Sierra Club v. Trump*, 379 F. Supp. 3d 883 (N.D. Cal. 2019), *stay denied by Sierra Club v. Trump*, 929 F.3d 670 (9th Cir. 2019); *El Paso Cty. v. Trump*, 408 F. Supp. 3d 840 (W.D. Tex. 2019); *California v. Trump*, 407 F. Supp. 3d 869 (N.D. Cal. 2019); *Washington v. Trump*, __F. Supp.  3d__, Case No. 2:19-cv-01502, 2020 U.S. Dist. LEXIS 33999 (W.D.Wash. Feb. 27, 2020). Pursuant to stays issued by the Supreme Court and the Fifth Circuit Court of Appeals, however, border wall construction utilizing FY 2019 DoD funds has been allowed to continue pending government appeals of these adverse decisions. *Sierra Club v. Trump*, 140 S. Ct. 1 (2019) (mem.); *El Paso Cty. v. Trump*, 2020 U.S. App. LEXIS 567 (5th Cir. Jan. 8, 2020).

3.     Plaintiffs have a pending challenge to the FY 2019 transfers before this Court. *Center for Biological Diversity v. Trump*, D.D.C. Case No. 1:19-cv-408-TNM; 2020 U.S. Dist. LEXIS 58160 (Apr. 2, 2020) (Order granting in part and denying in part government's motion to dismiss). That case is currently being briefed on summary judgment.

4.      In FY 2020, the Trump administration requested $8.6 billion for border wall construction. As was the case in FY 2019, Congress rejected the administration's border wall funding request, again appropriating $1.375 billion. Consolidated Appropriations Act, 2020. Pub. L. No. 116-93; H.R. 1158, 116th Cong. § 209(a)(1) (enacted on December 20, 2019) ("2020 CAA").

5.      Despite the numerous court decisions uniformly finding that the transfers of $6.7 billion in FY 2019 DoD appropriated funds for border wall are unlawful, the Trump administration is transferring *even more* FY 2020 DoD appropriated funds—$7.2 billion—using essentially the same statutory mechanisms relied upon for the FY 2019 transfers.

6.      Like the FY 2019 DoD funds, the unlawfully transferred FY 2020 DoD funds will again be extensively used to construct border walls on protected federal lands providing essential habitat for threatened and endangered species. For example, several of the FY 2020 border wall projects already announced will be conducted on remote and mountainous terrain within the Coronado National Forest, located in southeastern Arizona. This area provides some of the most vital cross-border wildlife corridors along the entire U.S.-Mexico border. If constructed, these border wall projects will likely result in the extirpation of endangered jaguars in the United States.

7.      Plaintiffs also challenge the administration's six March 16, 2020 determinations to broadly waive environmental and other laws for border wall construction being funded by the FY 2020 DoD appropriations transfers, pursuant to section 102(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546, codified at 8 U.S.C. § 1103 note. *See* 85 Fed. Reg. 14,953 (Del Rio Sector waivers)(Texas); 85 Fed. Reg. 14,958 (San Diego Sector) (California); 85 Fed. Reg. 14,960 (El

Centro Sector) (California); 85 Fed. Reg. 14,961 (Tucson Sector) (Arizona); 85 Fed. Reg. 14,963

(El Paso Sector) (New Mexico and Texas); 85 Fed. Reg. 14,965 (Yuma Sector) (Arizona and

California).

8.     In total, the Trump administration has now allocated more than $18.4 billion to

the President's border wall. The administration estimates that this $18.4 billion will fund

approximately 900 miles of construction. Well less than a third of this money—$5.1 billion—has

been appropriated by Congress.



(graphic credit: Washington Office on Latin America).

9.     As numerous courts have recognized, the FY 2019 transfers of DoD appropriated

funds for border wall construction are unlawful under the governing emergency and funding

statutory provisions, and also exceed the executive branch's constitutional authority by usurping

Congress's Article I Appropriation powers, U.S. CONST. art. I, § 9. The FY 2020 DoD transfers

are based on the same statutory authorities and mechanisms Federal Defendants relied upon for

the FY 2019 DoD transfers, and are unlawful for the same reasons.

10.     In addition, the six waivers issued pursuant to IIRIRA section 102(c) are counter to Constitutional principles of Separation of Powers, including the Nondelegation Doctrine.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 8 U.S.C. § 1103 note, and can grant declaratory relief pursuant to 28 U.S.C. §§ 2201-2202, the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and its equitable powers.

12.     Venue properly vests in this Court pursuant to 28 U.S.C. § 1391(b) and (e), because the violations are occurring in this district, Defendants reside in this district, and a substantial part of the events or omissions giving rise to the claims have occurred in this district due to decisions made by the Defendants.

## PARTIES

13.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("the Center") is a non-profit conservation organization dedicated to the protection of endangered species and their habitats through science, policy, and environmental law.  The Center is headquartered in Tucson, Arizona, with offices in Washington, D.C., and numerous other locations throughout the country, and an office in Baja California Sur, Mexico.  The Center has more than 74,000 members.

14.     The Center has worked for more than two decades to oppose environmentally harmful border fencing along the U.S.-Mexico border generally, and within the specific Border Patrol sectors where border wall construction will occur under the Defense Secretary's actions to transfer FY 2020 DoD appropriated funds to border wall construction. The Center also has a long history of advocating for the protection of rare wildlife habitat and specific species that would be impacted by the transfer and obligation of appropriated funds to border wall construction including jaguar, ocelot, peninsular bighorn sheep, Sonoran pronghorn, Mexican gray wolf,

Quino checkerspot butterfly, and coastal California gnatcatcher—and is directly responsible for the protection of numerous borderland species and their critical habitats under the Endangered Species Act. Center members, including but not limited to, Laiken Jordan and Michael Robinson, enjoy observing wildlife and their habitat in borderlands areas and enjoy recreating on public lands and in public areas that will be negatively affected by border wall construction funded by FY 2020 DoD appropriations transferred to border wall construction.

15.    Plaintiff DEFENDERS OF WILDLIFE ("Defenders") is a nonprofit organization with nearly 1.8 million members and supporters across the nation. Defenders' mission is to preserve wildlife and emphasize appreciation and protection for all species in their ecological role. Through advocacy, litigation, and other efforts, Defenders works to preserve species and the habitats upon which they depend. Defenders has been closely involved in policy and litigation matters associated with border wall construction along the U.S.-Mexico border for more than a decade. Defenders has field offices across the country, including in Santa Fe, New Mexico.

16.    Plaintiff ANIMAL LEGAL DEFENSE FUND ("ALDF") is a nonprofit 501(c)(3) organization with more than 200,000 members and supporters, including thousands of whom live in states located on the U.S.-Mexico border, and at least hundreds of whom live in towns that are located in close proximity to border areas at issue. This includes Elizabeth Walsh, who resides in El Paso, Texas, near Sunland Park, New Mexico, and the U.S.-Mexico border. Ms. Walsh has been a member of ALDF since at least 2012. She routinely visits the border areas that will be impacted by the emergency proclamation for professional and recreational purposes. Similarly, ALDF member Robert Knaier resides in San Diego County, California, and regularly visits the border area in California for recreational purposes. ALDF represents its members' interests by

working to protect the lives of animals, including wildlife, through the legal system. This includes prior litigation challenging unlawful attempts to waive environmental and animal protection laws to facilitate border construction. ALDF is headquartered in Cotati, California.

17.     Plaintiffs have organizational and membership-based interests in the preservation and conservation of specific areas of the U.S.-Mexico borderlands impacted by the transfer of FY 2020 DoD appropriated funds to border wall construction. Plaintiffs and their members are harmed by the Defense Secretary's actions to transfer FY 2020 DoD appropriated funds to border wall construction. Plaintiffs' members and staff live in, work in, or regularly visit the U.S.-Mexico borderlands region, including specific areas that will be impacted by the proposed border wall construction funded by the transferred FY 2020 DoD appropriated funds. These specific areas include numerous areas of federal, state, and local protected borderlands, including but not limited to Cleveland National Forest, Coronado National Forest, and lands administered by the U.S. Bureau of Land Management. Plaintiffs' staff and members use these specific borderland areas for hiking; camping; viewing and studying wildlife; photography; and other scientific, vocational, and recreational activities; and they have specific intentions to continue to use and enjoy these areas frequently and on an ongoing basis in the future. Border wall construction resulting from the Defense Secretary's actions to transfer FY 2020 DoD appropriated funds to border wall construction, and associated actions including stripping all vegetation within a 150-foot enforcement zone, road construction, and high-intensity lighting, would harm Plaintiffs' members and these protected interests in numerous ways. The harm would include immediate impacts, such as precluding future visitation of impacted areas, destroying wildlife habitat, and killing individual members of different wildlife species. Border wall construction would also result in longer term harm, by blocking connectivity between

wildlife populations in U.S. and Mexico, harming the long term viability of those species, and in some cases, resulting in their extirpation from the United States. These harms go to Plaintiffs' central organizational purposes.

18.     Defendant MARK ESPER, Secretary of Defense, is sued in his official capacity. The Defense Secretary is making decisions to transfer military construction and other appropriated funds to border wall construction. On February 13, 2020, the Defense Secretary made decisions approving the transfer of $3.381 billion in DoD appropriations to fund border construction on 31 border wall segments, totaling 177 miles.

19.     Defendant LIEUTENANT GENERAL TODD T. SEMONITE, Commander and Chief of Engineers of the U.S. ARMY CORPS OF ENGINEERS, is sued in his official capacity. The U.S. Army Corps of Engineers will receive transfers of appropriated funds, and implement DoD orders to obligate those funds to private contractors for border wall construction.

20.     Defendant CHAD WOLF, Acting Homeland Security Secretary, is sued in his official capacity.  Defendant Wolf issued the March 16, 2020 IIRIRA waiver determinations.

## STATUTORY BACKGROUND

### A.       2020 Consolidated Appropriations Act (DHS and DoD Appropriations Acts)

21.     The 2020 CAA is comprised of several individual appropriations act, providing funding for disparate federal agencies, including DHS and DoD. Pub. L. No. 116-93; 133 Stat. 2317.

22.     The 2020 CAA appropriates $1.375 billion to DHS "for the construction of barrier system along the southwest border." 2020 CAA, Division D (DHS Appropriations Act, 2020), § 209 (a)(1). This appropriation amounts to less than a quarter of the amount requested by the Trump administration for border wall construction.

23.     Congress also put specific additional limits on border wall construction in the 2020 CAA, directing that Federal funds "may not be made available" for border wall construction: (1) within the Santa Ana National Wildlife Refuge; (2) within the Bentsen-Rio Grande Valley State Park; (3) within La Lomita Historical park; (4) within the National Butterfly Center; (5) within or east of the Vista del Mar Ranch tract of the Lower Rio Grande Valley National Wildlife Refuge; or (6) within historic cemeteries. *Id*. § 210.

24.     The 2020 CAA provides that "[n]one of the funds made available in this or any other appropriations Act may be used to increase . . . funding for a program, project, or activity as proposed in the President's budget request for a fiscal year until such proposed change is subsequently enacted in an appropriation Act, or unless such change is made pursuant to the reprogramming or transfer provisions of this or any other appropriations Act." *Id*. § 739.

25.     The 2020 CAA provides the Defense Secretary with a general authority to transfer as much as $4.5 billion between FY 2020 DoD appropriations accounts. 2020 CAA, Division A (DoD Appropriations Act, 2020), § 8005.

26.     In addition, the 2020 CAA provides the Defense Secretary with a special authority to transfer as much as $2 billion between FY 2020 DoD appropriations accounts. *Id*. § 9002. The special transfer authority "is subject to the same terms and conditions as the [general transfer authority] provided in section 8005." *Id*.

27.     The general transfer authority and special transfer authority "may not be used unless for higher priority items, based on unforeseen military requirements, than those for which originally appropriated," and may not be used in "case[s] where the item for which funds are requested has been denied by Congress." *Id*. § 8005.

**B.  2020 Further Consolidated Appropriations Act (MILCON Appropriations Act)**

28.     Military construction ("MILCON") funding is appropriated separately from the remainder of DoD appropriations. Signed into law on the same day as the 2020 CAA, the 2020 Further Consolidated Appropriations Act ("FCAA") is also comprised of multiple appropriations acts, including the Military Construction, Veterans Affairs, and Related Agencies Appropriations Act, 2020 (Division F).

29.     MILCON appropriations enable "the Secretary of Defense and the Secretaries of the Army, Air Force, and Navy to plan, program, design, and build the runways, piers, warehouses, barracks, schools, hospitals, child development centers, and other facilities needed to support U.S. military forces at home and abroad."  LYNN M. WILLIAMS, CONGRESSIONAL RESEARCH SERVICE, MILITARY CONSTRUCTION: PROCESS, OUTCOMES, AND FREQUENTLY ASKED QUESTIONS (May 16, 2018).

30.     Congress authorized emergency MILCON projects pursuant to 10 U.S.C. § 2808(a), which provides:

> In the event of a proclamation of war or the proclamation by the President of a national emergency in accordance with the National Emergencies Act (50 U.S.C. 1601 et seq.) that requires use of the armed forces, the Secretary of Defense, without regard to any other provision of law, may undertake military construction projects, and may authorize the Secretaries of the military departments to undertake military construction projects, not otherwise authorized by law that are necessary to support such use of the armed forces. Such projects may be undertaken only within the total amount of funds that have been appropriated for military construction, including funds appropriated for family housing, that have not been obligated.

31.     Like the CAA, Congress expressly rejected the Trump administration's border wall funding request in enacting the FCAA. The administration requested $7.2 billion in MILCON emergency funding be directed to border wall construction, including $3.6 billion for

new border fencing in FY 2020 and $3.6 billion to replenish, or "backfill," funding reallocated

from MILCON funds for border wall construction in FY 2019. Congress instead provided no

money for border wall construction pursuant to the FCAA.

**C.     Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act**

32.     DHS and its component agency U.S. Customs and Border Protection ("CBP") are

domestic agencies charged with securing the borders and carrying out immigration functions.

Within CBP, the U.S. Border Patrol's mission is to prevent unlawful entry across approximately

7,000 miles of Mexican and Canadian international borders and 2,000 miles of coastal borders

surrounding Florida and Puerto Rico.

33.     Under section 102 of IIRIRA and amendments to that provision, Congress has

periodically directed DHS to build fencing on the southern border. 8 U.S.C. § 1103 note; Secure

Fence Act, P.L. 109-367 (enacted Oct. 26, 2016); 2008 Consolidated Appropriations Act. P.L.

110-161, div. E (enacted Dec. 26, 2007). DHS has fulfilled these border fencing mandates.

34.     Enacted in 2005 as an unrelated legislative rider to the "Emergency Supplemental

Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005," the

REAL ID Act amended IIRIRA section 102(c) to provide the DHS Secretary with authority "to

waive all legal requirements such Secretary, in such Secretary's sole discretion, determines

necessary to ensure expeditious construction of the barriers and roads under this section." P.L.

109-13, div. B.

35.     In its current form, IIRIRA section 102(c) provides:

**(c) Waiver.—**
  **(1) In general.--**Notwithstanding any other provision of law, the Secretary of
      Homeland Security shall have the authority to waive all legal requirements
      such Secretary, in such Secretary's sole discretion, determines necessary
      to ensure expeditious construction of the barriers and roads under this

Section. Any such decision by the Secretary shall be effective upon being published in the Federal Register.

**(2) Federal court review.—**

    **(A) In general.--**The district courts of the United States shall have exclusive jurisdiction to hear all causes or claims arising from any action undertaken, or any decision made, by the Secretary of Homeland Security pursuant to paragraph (1). A cause of action or claim may only be brought alleging a violation of the Constitution of the United States. The court shall not have jurisdiction to hear any claim not specified in this subparagraph.

    **(B) Time for filing of complaint.--**Any cause or claim brought pursuant to subparagraph (A) shall be filed not later than 60 days after the date of the action or decision made by the Secretary of Homeland Security. A claim shall be barred unless it is filed within the time specified.

    **(C) Ability to seek appellate review.--**An interlocutory or final judgment, decree, or order of the district court may be reviewed only upon petition for a writ of certiorari to the Supreme Court of the United States.

## <u>CONSTITUTIONAL BACKGROUND</u>

**A.**      **The Appropriations Clause**

36.    The U.S. Constitution provides that "no Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. CONST. art. I, § 9, cl. 7.

37.    The Appropriations Clause plays a critical role in the Constitution's separation of powers among the three branches of government and the checks and balances between them.

38.    The Clause has a "fundamental and comprehensive purpose . . . to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good, and not according to the individual favor of Government agents . . . ." *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 427-28 (1990); *id*. at 427 (without the Appropriations Clause, "the executive would possess an unbounded power over the public purse of the nation; and might apply all its moneyed resources at his pleasure." (*quoting* 2 J. STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 1348 (3d ed. 1858))).

39.     If a Court finds that the executive branch is spending money in violation of a

spending provision, "it would be drawing funds from the Treasury without authorization by

statute and thus violating the Appropriations Clause."  *United States v. McIntosh*, 833 F.3d 1163,

1175 (9th Cir. 2016).

### B.     Nondelegation Doctrine

40.     A statute unconstitutionally delegates legislative power when it confers

policymaking authority on the executive branch without providing an "intelligible principle to

which" the executive branch "is directed to conform." *Whitman v. Am. Trucking Ass'ns*, 531 U.S.

457, 472 (2001); *Panama Ref. Co. v. Ryan*, 293 U.S. 388 (1935).

## FACTUAL BACKGROUND

### A.     The Defense Secretary's Transfer of DoD Fiscal Year 2020 Appropriations for Border Wall Construction

41.     On January 13, 2020, national press outlets reported that the Trump

administration intends to transfer $7.2 billion in FY 2020 DoD appropriated funds using the

same statutory mechanisms relied upon for the FY 2019 DoD transfers. The administration has

yet to provide a public decision document regarding this plan.

42.     On January 14, 2020, the DHS Acting Secretary requested DoD assistance and

funding in order to construct 38 proposed border wall projects covering approximately 270

miles. These border wall projects include construction of new, 30-foot tall border wall,

construction of new patrol roads, and installation of lighting.

43.     On January 17, 2020, the U.S. Army Corps of Engineers estimated that it would

cost $5.5 billion to construct these 38 segments. The Army Corps anticipated that it would be

capable of overseeing the construction of 31 of the 38 segments, at an estimated cost of $3.8

billion.

44.     On February 13, 2020, the Defense Secretary made decisions approving the transfer of DoD appropriations to fund border construction on 31 of the 38 requested border wall segments, and directing the obligation of $3.381 billion to those projects. These 31 segments total 177 miles of border wall construction in the four southern border states.

45.     The DoD Drug Interdiction and Counter-Drug Activities account ("counterdrug account") is used as a pass-through account for the $3.381 billion in DoD appropriated funds being transferred to DHS border wall construction. The funds are transferred into the counterdrug account, and then immediately transferred from the account to the Army Corps. The Army Corps then issues contracts to private border wall contractors and manages construction.

46.     The February 13, 2020 transfers were undertaken pursuant to two categories of purported authorities. First, the Defense Secretary approved the transfer of $2.202 billion pursuant to the DoD FY 2020 Appropriations Act general transfer authority. CAA, Div. A, § 8005. These moneys were taken from accounts funded by Congress in order to procure Army tactical and support vehicles; Navy combat aircraft; Navy amphibious ships; and Air Force combat aircraft.

47.     Second, the Defense Secretary approved the transfer of $1.629 billion pursuant to the DoD FY 2020 Appropriations Act special transfer authority. CAA Div. A, § 9002. These moneys were taken from accounts funded by Congress in order to procure Air Force airlift aircraft; and National Guard and Reserve equipment.

48.     The Trump administration has not yet announced any transfer of DoD FY 2020 emergency MILCON funds, where the remainder (approximately $3.819 billion) of the $7.2 billion in DoD FY 2020 appropriated funds will be sourced from in order to fund border wall construction. The President did, however, issue a one-year  "Continuation of the National

Emergency With Respect to the Southern Border of the United States," pursuant to section 202(d) of the National Emergencies Act, 50 U.S.C. § 1622(d). *See* 85 Fed. Reg. 8,715 (Feb. 14, 2020).  The emergency proclamation is a prerequisite to invoking the emergency MILCON funding transfer authority of 10 U.S.C. § 2808.

**B.   Border Wall Construction Funded by the DoD FY 2020 Appropriations Transfers Will Significantly Impact Federal Lands, Endangered Species, and Other Natural Resources**

49.     The 31 border wall segments that have been funded by DoD FY 2020 appropriations will be undertaken on 13 border wall "projects" within the Del Rio, El Centro, El Paso, San Diego, and Yuma Border Patrol Sectors. *See* Appendix A (listing cost and length of each segment).

50.     If carried out, this border wall construction will result in significant environmental impacts, directly harming Plaintiffs and their members. The environmental harm includes construction on protected federal lands including National Forests, and adverse impacts to threatened and endangered species listed under the Endangered Species Act, as well as their designated critical habitat.

51.     Of particular concern to Plaintiffs' core organizational interests is the fact that the unlawful transfer of DoD FY 2020 appropriated funds will result in border wall construction that severs wildlife connectivity and cross-border movement between wildlife populations on either side of the U.S.-Mexico border.

52.     Given that approximately 700 miles of the southern border already has some form of fencing or "vehicle barriers" (passable to wildlife) on it, the cumulative and irreversible impact of additional border fencing on wildlife populations becomes ever greater with each additional mile of border wall constructed.

53.     As of March 13, 2020, the Trump administration states that it has constructed approximately 139 miles of border wall. The large majority of this construction—125 miles— has been undertaken to replace vehicle barriers or older fencing on protected federal lands, including Organ Pipe Cactus National Monument, San Bernardino National Wildlife Refuge, and Cabeza Prieta National Wildlife Refuge. These protected lands contain essential habitat corridors and connectivity for endangered species with populations on both sides of the border. Replacement of vehicle barriers with border walls in these areas has already had significant adverse impacts on these protected lands, as well as wildlife corridors and connectivity.

54.     In contrast to the areas funded by DoD FY 2019 appropriations, the proposed border wall construction using DoD FY 2020 appropriations will be focused in areas that currently have no form of border fencing. In total, the Trump administration hopes to build approximately 291 miles of new primary border wall in areas with no existing barriers.

55.     Particularly in the federal lands of California, Arizona, and New Mexico, borderland areas that remain unfenced are primarily in rugged and mountainous terrain and have high environmental value. For example, DoD FY 2020 transferred funds will be used to build border wall segments within areas of the Tucson Sector and El Paso Sectors containing designated critical habitat for the endangered jaguar, and which would block that species' key remaining corridors for movement between populations in the United States and Mexico.

**C.     The Six March 16, 2020 IIRIRA Section 102(c) Waiver Determinations**

56.     Border wall construction is a major federal action that would normally require compliance with environmental and other laws. For example, such construction would require preparation of an environmental impact statement ("EIS") pursuant to the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq*. This EIS would contain

consideration of a reasonable range of alternatives, measures to avoid or minimize environmental impacts, and measures to mitigate environmental damage. In addition, because border wall construction is proposed for numerous areas occupied by endangered and threatened species, and/or containing designated critical habitat for such species, such construction would also have to comply with Endangered Species Act ("ESA") requirements, 16 U.S.C. § 1531 *et seq*. These requirements include the duty of CBP to "consult" with U.S. Fish and Wildlife Service regarding potential impacts, and to ensure that border wall impacts do not jeopardize the continued existence of listed species or result in the destruction or adverse modification of their critical habitat.

57.    On March 16, 2020, however, the Acting DHS Secretary invoked the authority purportedly contained in Section 102 IIRIRA, to issue six determinations waiving the application of NEPA, the ESA, and more than 30 other statutory requirements in order to expedite construction of the 31 border wall projects totaling approximately 177 miles to be funded by the unlawfully transferred DoD FY 2020 moneys. *See* 85 Fed. Reg. 14,953 (Del Rio Sector waivers)(Texas); 85 Fed. Reg. 14,958 (San Diego Sector) (California); 85 Fed. Reg. 14,960 (El Centro Sector) (California); 85 Fed. Reg. 14,961 (Tucson Sector) (Arizona); 85 Fed. Reg. 14,963 (El Paso Sector) (New Mexico and Texas); 85 Fed. Reg. 14,965 (Yuma Sector) (Arizona and California).

## **CLAIMS FOR RELIEF**

### **FIRST CLAIM FOR RELIEF**
### **Unlawful Transfer of Appropriated Funds**
### **Using the Counterdrug Account as a Pass-Through**

#### **Violation of 2020 Consolidated Appropriations Act**

58.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

59.     The APA requires courts to hold unlawful and set aside any agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2).

60.     The Defense Secretary's February 13, 2020 decisions transferring $3.381 billion of DoD appropriations through the counterdrug account in order to fund construction of 31 border wall segments totaling approximately 177 miles is arbitrary, capricious, an abuse of discretion, and not in accordance with law, in contravention of the APA standards of review.

61.     The Defense Secretary's February 13, 2020 decisions transferring $3.381 billion of DoD appropriations through the counterdrug account in order to fund construction of 31 border wall segments totaling approximately 177 miles violate the 2020 CAA, by exceeding the $1.375 billion Congress appropriated to DHS for border wall construction. 2020 CAA, Div. D § 209(a)(1).

62.     The Defense Secretary's February 13, 2020 decisions transferring $3.381 billion of DoD appropriations through the counterdrug account in order to fund construction of 31 border wall segments totaling approximately 177 miles violate the 2020 CAA prohibition that "[n]one of the funds made available in this or any other appropriations Act may be used to increase . . . funding for a program, project, or activity  as proposed in the President's budget request for a fiscal year until such proposed change is subsequently enacted in an appropriation Act, or unless such change is made pursuant to the reprogramming or transfer provisions of this or any other appropriations Act." 2020 CAA, Div. C. § 739; *see also* 10 U.S.C. § 2214(b).

63.     The Defense Secretary's February 13, 2020 decisions transferring $3.381 billion of DoD appropriations through the counterdrug account in order to fund construction of 31

border wall segments totaling approximately 177 miles violate the DoD general and special transfer authority limitations, as the transfers would be an unlawful "case where the item for which funds are requested has been denied by the Congress."  2020 CAA, Div. A § 8005.

64.     Plaintiffs and their members will suffer injury in fact if the Defense Secretary's February 13, 2020 decisions transferring $3.381 billion of DoD appropriations through the counterdrug account in order to fund construction of 31 border wall segments totaling approximately 177 miles are not declared unlawful.  Plaintiffs and their members have no other adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### (IN THE ALTERNATIVE TO THE FIRST CLAIM FOR RELIEF)
### <u>Unlawful Transfer of Appropriated Funds</u>
### <u>Using the Counterdrug Account as a Pass-Through</u>

### Violation of 2020 Consolidated Appropriations Act

65.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

66.     In the event the Court finds that the Defense Secretary's February 13, 2020 decisions transferring $3.381 billion of DoD appropriations through the counterdrug account in order to fund construction of 31 border wall segments totaling approximately 177 miles violate are not subject to APA review, Plaintiffs have a non-statutory right of action to enjoin and declare those actions as *ultra vires*.

67.     For the same reasons described in the First Claim for Relief, the Defense Secretary's February 13, 2020 decisions transferring $3.381 billion of DoD appropriations through the counterdrug account in order to fund construction of 31 border wall segments totaling approximately 177 miles violate are unlawful under the 2020 CAA.

68.     Plaintiffs and their members will suffer injury in fact if the Defense Secretary's February 13, 2020 decisions transferring $3.381 billion of DoD appropriations through the

counterdrug account in order to fund construction of 31 border wall segments totaling approximately 177 miles are not declared unlawful.

### THIRD CLAIM FOR RELIEF

### Unlawful Transfer of Funds
### Appropriated to Military Construction

### Violation of 2020 Consolidated Appropriations Act and 10 U.S.C. § 2808

69.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

70.     The APA requires courts to hold unlawful and set aside any agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2).

71.     The Defense Secretary's pending actions to transfer approximately $3.819 billion in MILCON funds to border wall construction are arbitrary, capricious, an abuse of discretion, and not in accordance with law, in contravention of the APA standards of review.

72.     The Defense Secretary's pending actions to transfer approximately $3.819 billion in MILCON funds to border wall construction violate the 2020 CAA, by exceeding the $1.375 billion Congress appropriated to DHS for border wall construction. Div. D, § 209(a)(1).

73.     The Defense Secretary's pending actions to transfer approximately $3.819 billion in MILCON funds to border wall construction violate the 2020 CAA prohibition that "[n]one of the funds made available in this or any other appropriations Act may be used to increase . . . funding for a program, project, or activity  as proposed in the President's budget request for a fiscal year until such proposed change is subsequently enacted in an appropriation Act, or unless such change is made pursuant to the reprogramming or transfer provisions of this or any other appropriations Act."  Div. C § 739.

74.     The Defense Secretary's pending actions to transfer approximately $3.819 billion in MILCON funds to border wall construction are unlawful under the plain language of 10 U.S.C. § 2808.

75.     10 U.S.C. § 2808 does not provide an emergency source of funding for border wall construction. 10 U.S.C. § 2801(a) defines the term "military construction" as including "any construction, development, conversion, or extension or any kind carried out *with respect to a military installation* … or any acquisition of land or construction of a defense access road." In turn, "military installation" means a "base, camp, post, station, yard, center, or other activity under the jurisdiction of the Secretary of a military department . . . ."  (emphasis added).

76.     The Defense Secretary's pending actions to transfer approximately $3.819 billion in MILCON funds to border wall construction will fund construction on lands that do not constitute a military installation, and thus are not lawfully eligible for emergency military construction transferred appropriations.

77.     Plaintiffs and their members will suffer injury in fact if the Defense Secretary's pending actions to transfer approximately $3.819 billion in MILCON funds to border wall construction are not declared unlawful. Plaintiffs and their members have no other adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**(IN THE ALTERNATIVE TO THE THIRD CLAIM FOR RELIEF)**
<u>**Unlawful Transfer of Funds**</u>
<u>**Appropriated to Military Construction**</u>

**Violation of 2020 Consolidated Appropriations Act and 10 U.S.C. § 2808**

78.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

79.     In the event the Court finds that Defense Secretary's pending actions to transfer approximately $3.819 billion in MILCON funds to border wall construction are not subject to

APA review, Plaintiffs have a non-statutory right of action to enjoin and declare those actions as *ultra vires*.

80.     For the same reasons described in the Third Claim for Relief, the Defense Secretary's pending actions to transfer approximately $3.819 billion in MILCON funds to border wall construction is unlawful under the 2020 CAA and 10 U.S.C. § 2808.

81.     Plaintiffs and their members will suffer injury in fact if the Defense Secretary's pending actions to transfer approximately $3.819 billion in MILCON funds to border wall construction are not declared unlawful.

**FIFTH CLAIM FOR RELIEF**
**Constitutional Violation**

**Violation of the Appropriations Clause of the U.S. Constitution**

82.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

83.     Article I of the U.S. Constitution provides that "no Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."  U.S. CONST. art. I, § 9, cl. 7.

84.     Congress's "power of the purse" has been described as the "most important single curb" on presidential authority, because it vests the powers of public revenue and public expenditures with the people's representatives in Congress.  EDWARD S. CORWIN, THE CONSTITUTION AND WHAT IT MEANS TODAY 134 (13th ed. 1975); *see Reeside v. Walker*, 52 U.S. 272, 291 (1850) ("However much money may be in the Treasury at any one time, not a dollar of it can be used in the payment of any thing not thus previously sanctioned.").

85.     The Defense Secretary's actions to transfer $7.2 billion in DoD FY 2020 appropriated funds to border wall construction violate the specific manner in which Congress has elected to exercise its constitutional power of the purse in enacting the 2020 Consolidated

Appropriations Act.  Congress has not appropriated the additional DoD funds being transferred

to border wall construction.  The Defense Secretary's actions to transfer DoD appropriated funds

to border wall construction violate the Appropriations Clause.

86.     Plaintiffs and their members will suffer injury in fact if this constitutional

violation is not declared unlawful.  Plaintiffs and their members have no other adequate remedy

at law.

**SIXTH CLAIM FOR RELIEF**
**<u>Constitutional Violation</u>**
**<u>Violation of the Non-Delegation and Separation of Powers Doctrine</u>**

**<u>(Six March 16, 2020 IIRIRA Waiver Determinations)</u>**

87.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

88.     On March 16, 2020, the Acting DHS Secretary issued six determinations pursuant

to IIRIRA section 102 purporting to waive the application of NEPA, the ESA, and more than 30

other laws. *See* 85 Fed. Reg. 14,953 (Del Rio Sector waivers)(Texas); 85 Fed. Reg. 14,958 (San

Diego Sector) (California); 85 Fed. Reg. 14,960 (El Centro Sector) (California); 85 Fed. Reg.

14,961 (Tucson Sector) (Arizona); 85 Fed. Reg. 14,963 (El Paso Sector) (New Mexico and

Texas); 85 Fed. Reg. 14,965 (Yuma Sector) (Arizona and California).

89.     Article I, Section 1 of the United States Constitution directs that "[a]ll legislative

Powers herein granted shall be vested in a Congress of the United States."

90.     Article II, Section 1 of the Constitution directs that "[t]he executive Power shall

be vested in a President of the United States of America."

91.     Under these constitutional provisions, Congress may not delegate legislative

authority to an executive branch agency, or in the case of IIRIRA section 102(c), may not

delegate legislative authority to an individual executive branch official.

92.     IIRIRA section 102(c) unconstitutionally delegates legislative powers to the DHS

Secretary, an executive branch official, and unconstitutionally purports to exempt the Executive Branch from complying with its constitutional obligation to faithfully execute the laws.

93.     The Acting DHS Secretary's March 16, 2020 issuance of six determinations invoking the authority purportedly contained in IIRIRA section 102(c) in order to waive the application of NEPA, the ESA, and more than 30 other statutory requirements in order to expedite construction of the 31 border wall projects totaling approximately 177 miles funded by the unlawfully transferred DoD FY 2020 moneys are an unconstitutional exercise of legislative power by an executive branch official and violation of the U.S. Constitution's separation of powers and non-delegation requirements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

1.     Declare the Defense Secretary's decisions to transfer DoD FY 2020 appropriated funds to border wall construction are unlawful under the 2020 CAA and 10 U.S.C. § 2808;

2.     Declare the Defense Secretary's decisions to transfer DoD FY 2020 appropriated funds to border wall construction are unconstitutional under the Article I Appropriations Clause;

3.     Set aside and vacate the Defense Secretary's decisions to transfer DoD FY 2020 appropriated funds to border wall construction;

4.     Enjoin all transfers and obligations of DoD FY 2020 appropriated funds;

5.     Declare that the six March 16, 2020 IIRIRA Waiver Determinations specifically, and the IIRIRA Section 102(c) waiver authority generally, violate the U.S. Constitution's fundamental Separation of Powers and Non-Delegation Doctrine;

6.     Retain jurisdiction to ensure compliance with the Court's Orders;

7.      Award Plaintiffs their reasonable costs of litigation, including reasonable attorneys' fees, expert fees, and costs; and

8.      Grant such other and further relief as the Court may deem just and proper.

DATED: May 12, 2020                          Respectfully submitted,

*/s/ Brian Segee*

Brian Segee (CA Bar No. 200795)(Pro Hac Vice)
CENTER FOR BIOLOGICAL DIVERSITY
660 S. Figueroa St., Suite 1000
Los Angeles, CA 90017
Tel: (805) 750-8852
Email: bsegee@biologicaldiversity.org

*/s/ Anchun Jean Su*

Anchun Jean Su (D.C. Bar No. CA285167)
CENTER FOR BIOLOGICAL DIVERSITY
1411 K Street N.W., Suite 1300
Washington, D.C. 20005
Tel: (202) 849-8399
Email:  jsu@biologicaldiversity.org

Marc Fink (Minn. Bar No. 343407)
Center for Biological Diversity
209 East 7th Street
Duluth, MN 55805
Tel: (218) 464-0539
Email: mfink@biologicaldiversity.org
*Pro Hac Vice Application Pending*

Jason C. Rylander (D.C. Bar No. 474995)
Michael P. Senatore (D.C. Bar No. 453116)
DEFENDERS OF WILDLIFE
1130 17th Street, NW
Washington, DC 20036
Tel: (202) 682-9400 x 145
Facsimile: (202) 682-1331
Email: jrylander@defenders.org
Email: msenatore@defenders.org

Anthony T. Eliseuson (IL Bar No. 6277427)
ANIMAL LEGAL DEFENSE FUND

150 South Wacker Drive, Suite 2400
Chicago, IL  60606
Tel: (707) 795-2533
Email: aeliseuson@aldf.org

*Attorneys for Plaintiffs*

**Appendix A**

| Project Name | Segment Miles | Est. Project Cost ($M) |
|---|---|---|
| Yuma A (segment 1) | 7 | $140 |
| Yuma A (segment 2) | 9 | $180 |
| El Centro A | 10.2 | $204 |
| Tucson A (segment 1) | 9 | $180 |
| Tucson A (segment 2) | 14 | $280 |
| Tucson A (segment 3) | 1 | $20 |
| Tucson A (segment 4) | 1 | $20 |
| Tucson A (segment 5) | 4.5 | $90 |
| Tucson B (segment 5) | 4.1 | $82 |
| Tucson B (segment 6) | 2.1 | $42 |
| El Paso A | 20 | $400 |
| El Paso B (segment 6) | 2.4 | $48 |
| El Paso C (segment 1) | 3 | $60 |
| El Paso C (segment 2) | 7 | $140 |
| Tucson C (segment 1) | 7 | $140 |
| Tucson C (segment 3) | 2.6 | $52 |
| Tucson C (segment 4) | 5.7 | $114 |
| Tucson B (segment 1) | 2.1 | $42 |
| Tucson B (segment 3) | 21 | $420 |
| Tucson B (segment 4) | 0.2 | $4 |
| Yuma B (segment 1) | 0.3 | $6 |
| Yuma B (segment 2) | 0.3 | $6 |
| San Diego A (segment 1) | 13.7 | $274 |
| San Diego A (segment 2) | 2 | $40 |
| San Diego A (segment 3) | 2 | $40 |
| Del Rio A | 2 | $40 |
| Del Rio B | 2 | $40 |
| El Paso D (segment 1) | 3 | $60 |
| El Paso D (segment 2) | 1 | $20 |
| El Paso D (segment 3) | 17 | $340 |
| El Paso D (segment 4) | 0.6 | $12 |